IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| SANTOVA LOGISTICS, LTD., *Plaintiff*, | No. 6:12–cv–00007 |
| v. | MEMORANDUM OPINION |
| CASTELLO 1935, INC., d/b/a CASTELLO GROUP, *Defendant*. | JUDGE NORMAN K. MOON |

Santova Logistics, Ltd. ("Santova" or "Plaintiff"), a South African freight-forwarding[1] company, alleges that Castello 1935, Inc. ("Castello" or "Defendant"), an importer and seller of linens headquartered Lexington, Virginia, is liable to Santova pursuant to Castello's failure to pay for its receipt of certain internationally-shipped hotel bed linens. Plaintiff asserts that this suit is properly within the Court's admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1). Defendant moves to dismiss, arguing that this matter is a run-of-the-mill, land-based contract dispute that does not fall within the admiralty jurisdiction of the Court. (docket no. 4). The parties have requested a decision on the submissions, so I dispense with oral argument. I find that this matter falls within the Court's quasi-contract admiralty jurisdiction, and I will deny Defendant's Motion.

---

[1] "Essentially, a freight forwarder assists a shipper in booking and preparing cargo for shipment." *Contship Containerlines, Inc. v. Howard Indus., Inc.*, 309 F.3d 901, 911 (6th Cir. 2002).

## I. BACKGROUND

Plaintiff alleges that, in early 2009, Defendant contracted with a non-party Chinese company, Changzhou Hua Er Rui International Trade Co., Ltd. ("Changzhou") and agreed to purchase $26,985.50[2] worth of bed linens. Compl. ¶ 6; see Ex. 1. Plaintiff served as a freight forwarder, and arranged for the transportation of the linens from Shanghai to Los Angeles aboard the M/V LIHUE. Compl. ¶ 7; see Ex. 2. As I observe in Part III, Santova engaged several other entities during the course of its freight forwarding duties, such that Santova did not physically ship the cargo itself. The linens were delivered as expected in Los Angeles, and were picked up in May of 2009. Compl. ¶ 8. Plaintiff claims that Castello took possession of the goods upon their arrival.[3] Compl. ¶ 9.

Despite delivering the linens, Changzhou evidently was not paid for them, and it filed suit in the Chinese Maritime Court against Santova's dedicated Chinese agent, Patent International Logistics (Shanghai) Co., Ltd. ("Patent"). Compl. ¶ 12–13. The Chinese Maritime Court awarded judgment to Changzhou, and the decision was affirmed by Shanghai's Supreme People's Court. Compl. ¶ 13; see Ex. 3 at 6 (The Shanghai Supreme People's Court explained that "the carrier[] had broken its promises of delivery with the bill of lading and violated its obligation of properly and carefully taking good care of the goods. It is liable to compensate [Changzhou] for its loss and damage.").

---

[2] Plaintiff's Complaint initially describes a contract worth $26,985.80, see Compl. ¶¶ 6, 10, but it goes on to allege that Changzhou sought to recover $26,985.50 in the Chinese lawsuit, and Plaintiff uses the $26,985.50 number throughout the duration of the Complaint, see ¶¶ 12, 16, 21, 22, 24–27, 30. I assume that the thirty cent discrepancy is the result of a typographical error, but I proceed herein using the lesser amount, since that is what Plaintiff requests in its prayer for relief.

[3] Defendant states that it actually did not take (and could not have taken) possession of the linens, since Castello did not even exist as a legal entity in 2009; instead, according to Defendant, the buyer in 2009 was "Castro Group." Def.'s Br. 1 n.1. Defendant apparently intends to raise this defense at a later time. See id.

Pursuant to Provision 10.1 of the agency agreement between Santova[4] and Patent, Santova was responsible for satisfying the Chinese judgment against Patent, its agent. Compl. ¶ 14–15; *see* Ex. 4. Accordingly, Santova paid the $26,985.50 judgment. Compl. ¶ 16. In the instant Complaint, Santova claims that its liability was caused by the "unlawful and unjustified actions of Castello in not paying for the [linens] it received," and Santova thus asserts claims for implied or equitable indemnity (Count One), unjust enrichment (Count Two), and breach of contract as the equitable subrogee of Changzhou (Count Three). Compl. ¶ 17–30.

## II. APPLICABLE LAW

When it comes to a motion for dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure,

> [t]here are two critically different ways in which to present a motion to dismiss . . . . First, it may be contended that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based. In that event, all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration. Second, it may be contended that the jurisdictional allegations of the complaint were not true. A trial court may then go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations.

*Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). The Motion *sub judice* is of the first variety, as Defendant simply argues that admiralty jurisdiction is improper under the governing statute, given the facts alleged. In such an instance, "[t]he moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R.R. v. United States*, 945 F.2d 765, 768

---

[4] In the referenced agency agreement, Santova is identified as "Spectrum Shipping, LLC," which was Santova's name before a corporate name change occurred in 2007. Compl. 3 n.2.

(4th Cir. 1991) (citing *Trentacosta v. Frontier Pac. Aircraft Indus.*, 813 F.2d 1553, 1558 (9th Cir. 1987)).

### III. DISCUSSION

The governing jurisdictional statute provides that the "district courts shall have original jurisdiction . . . of [a]ny civil case of admiralty or maritime jurisdiction . . . ." 28 U.S.C. § 1333(1). As the Supreme Court of the United States has explained, for a district court to have proper subject matter jurisdiction over a *contractual* dispute under § 1333(1), the contract at issue must be a "maritime" one. *See, e.g., Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 23 (2004). And "[m]aritime jurisdiction when founded upon contract depends upon the nature and subject matter of the contract." *Sanderlin v. Old Dominion Stevedoring Corp.*, 385 F.2d 79, 81 (4th Cir. 1967) (citing *N. Pac. S.S. Co. v. Hall Bros. Marine Ry. & Shipbuilding Co.*, 249 U.S. 119, 125 (1919)). While no clear line has been drawn between maritime and non-maritime contracts, *Kossick v. United Fruit Co.*, 365 U.S. 731, 735 (1961), at bottom, "the true criterion is whether [the contract] has reference to maritime service or maritime transactions." *Kirby*, 543 U.S. at 24 (citations and internal quotation marks omitted).

Several different contracts came into being during the course of the linens shipment in 2009. Three such contracts are referenced in Plaintiff's Complaint. The first contract is the one between Castello and Changzhou, which established the purchasing agreement and set a price for the linens. *See* Compl. Ex. 1 (confirmatory invoice). The second "contract" is a bill of lading that lists "Eurasia Freight Service Inc." on its header, lists the shipper as "Allservices," and indicates that the goods are consigned to "CCB International Customs Broker." *See* Compl. Ex.

2.[5] The third contract is an Agency Agreement between Santova (formerly Spectrum Shipping Ltd.) and Patent, part of which formed the basis of Santova having to pay the Chinese judgment on behalf of Patent. *See* Compl. Ex. 4.

The first contract (the agreement of sale) is not a maritime contract; it merely represents an agreement between a buyer and a seller, and it involves no specifically maritime aspects. The third contract (the agency agreement) is also not a maritime one. *See Pierside Terminal Operators, Inc. v. M/V Floridian*, 423 F. Supp. 962, 969–70 (citing *Black Sea State S.S. Line v. Ass'n of Int'l Trade Dist. 1, Inc.*, 95 F.Supp. 180 (S.D.N.Y.1951)) ("A contract of indemnity, even where it be for default in the performance of a maritime service, is not essentially maritime in character since it cannot, by definition, 'relate to a ship in its use as such.'"). But because its "primary objective is to accomplish the transportation of goods by sea" from Shanghai to Los Angeles, the second contract mentioned above (the bill of lading) *is* a maritime contract. *Kirby*, 543 U.S. 24. The other bills of lading are also maritime contracts, and Plaintiff claims to be a party to at least one such contract. It is true that none of the bills of lading represent a contract *between this Plaintiff and this Defendant*, so I thus cannot find that any of the bills of lading, standing alone, gives rise to this Court's admiralty jurisdiction. Unlike most cases in which

---

[5] According to Plaintiff, Exhibit 2 confirms the fact that Plaintiff arranged for the transportation of the linens from Shanghai to Los Angeles. *See* Compl. ¶ 7. Having inspected the bill of lading, however, I cannot find that it confirms such an arrangement. Instead, as I mentioned above, it lists "Eurasia Freight Service Inc." on its header; it lists "Allservices" as the shipper; it describes the shipment being consigned to "CCB International Customs Broker"; and it is stamped at the bottom by Fan Cheng International Transportation Service Co., Ltd. ("Fan Cheng"). None of these entities, of course, are parties to the instant suit. The only mention the document makes of either party to this case is "Castello" being listed in the box indicating "Marks and Numbers."

Plaintiff's Exhibit 3 sheds some light on the shipping arrangement. Exhibit 3, quoted on page 2, *supra*, is a translated copy of the opinion from the Shanghai Supreme People's Court, which affirmed the lower court's judgment against Patent. From that opinion, it appears that several bills of lading exist (or existed), and that Santova engaged Patent, which in turn engaged Fan Chang, to ship the linens. *See* Compl. Ex. 3, at 2–3. Exhibit 2, then, is apparently the final bill of lading, representing the end result of that process.

courts discuss the propriety of exercising admiralty jurisdiction over a contract dispute under § 1333(1), Santova and Castello are not the two parties to the contract at issue.[6]

I do accept, however, Plaintiff's argument that an alternative basis for the Court's subject matter jurisdiction exists under the law of quasi-contract, as it applies to admiralty. That is, "[a]dmiralty courts have jurisdiction over quasi-contractual claims that arise out of maritime contracts or other inherently maritime transactions." *Barna Conshipping, S.L. v. 2,000 Metric Tons, More or Less, of Abandoned Steel*, 410 F. App'x 716, 422 (4th Cir. 2011) (per curiam) (citations and internal quotation marks omitted). Such quasi-contract claims are made by parties "who, for various reasons, could not prevail on a contract claim." *Id.* (citing *Matarese v. Moore-McCormack Lines*, 158 F.2d 631, 634 (2d Cir. 1946)).

One reason a party could not prevail on a contract claim is the party is not a party to, or a third-party beneficiary of, the relevant contract. Therefore, even if Plaintiff and Defendant are not both parties to one of the earlier bills of lading, as I have assumed, Plaintiff's Complaint can still be brought before this Court under a quasi-contract theory, since the alleged damages quite clearly arose as a result of the breach of at least one of these maritime contracts.[7] *See Archawski v. Hanioti*, 350 U.S. 532, 535 (1956) ("[S]o long as the claim asserted arises out of a maritime contract, the admiralty court has jurisdiction over it."); *Amerind Shipping Corp. v. Jordan Int'l Co.*, 314 F. Supp. 1324, 1326 (E.D. La. 1970). In *Amerind Shipping*, a case quite similar to the one at the bar, an agent for ocean carriers alleged that it handled a shipment of steel for an importer, and paid the wharfage charge that the importer refused to repay. The court retained the

---

[6] I do not foreclose on the possibility that an express contract existed between Plaintiff and Defendant. But because I find that this Court has subject matter jurisdiction on quasi-contract grounds, I do not decide the issue.

[7] This much seems clear from the fact that Changzhou originally sued Patent in the "Chinese Maritime Court," and the only contract between those two entities was one of the bills of lading.

6

case in admiralty, stating, in relevant parts, that it had jurisdiction since "the unjust enrichment [to the importer] arose as a result of the breach of a maritime contract." *Id.* (quoting *Archawski*, 350 U.S. at 536)).

Santova's liability to Changzhou undoubtedly "arose" because its agent, Patent, breached its obligations under a bill of lading, which I find to be a maritime contract under the definition developed by other courts. Santova's claims against Castello, then, likewise arose as a result of the breach of that contract. I find Defendant's efforts to distinguish *Barna Conshipping* and *Archawski* unavailing, and I will deny Defendant's Motion.

## IV. CONCLUSION

Defendant does not dispute that various bills of lading confirm the fact Plaintiff arranged for the maritime carriage of certain linens from Shanghai to Los Angeles. Those bills of lading are maritime contracts under admiralty law; and although it does not appear that Plaintiff and Defendant are both parties to any such contract, I will deny Defendant's Motion and exercise the Court's jurisdiction on a quasi-contractual basis.

The Clerk of the Court is directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Entered this 19th day of June, 2012.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE